## UNITED STATES

### v.

### Ronald E. BAGGATTS.

### No. CR86–275.

United States District Court, District of Columbia.

Nov. 3, 1986.

Betty A. Soiefer, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Thomas Lumbard, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

In this prosecution for possession of counterfeit currency the defendant moves to suppress counterfeit bills taken from his pants pocket, a "blue bag" containing additional counterfeit money and tools for making it, and oral and written statements made to the police at and after his arrest. Crediting most of the testimony of the arresting officers, substantially all of the testimony of defendant's girlfriend (and co-occupant of his apartment), and a portion of the defendant's, the Court finds the facts to be as hereinafter set forth, and concludes that the motion to suppress must be granted.

### I.

On the evening of June 9, 1986, in the District of Columbia, uniformed officers of the Metropolitan Police Department arrested a woman in possession of counterfeit $20 bills who identified Ronald E. Baggatts as the source. When questioned by Det. William Wagner of the MPD Robbery Squad, she informed him that Baggatts had more of it, together with ink, brushes, and the like, which he kept in a "blue bag" in his apartment. She accompanied Det. Wagner to the apartment building and pointed out Baggatts' apartment to him. Thereafter, without consulting with anyone, or applying for a warrant either to search or arrest, Dets. Wagner and Dunn of Robbery, and Det. Sally Kirk of the Check and Fraud Squad, MPD, went to the suspect's apartment, No. 2 at 847 19th St., Northeast, shortly before 9:00 a.m., Tuesday, June 10th, to continue their investigation by "interviewing" Baggatts if he were to be found there.

They knocked on the apartment door and identified themselves as police in response to Baggatts' girlfriend's query through the closed door. Although preparing to leave for work and only partially clothed, she opened the door to them. She asked them their purpose and was told that their "business" was with Baggatts. Observing Baggatts apparently asleep on the bed through the partially open bedroom door, without further encouragement from the girlfriend the three detectives entered the apartment, crossed to and entered the bedroom, and proceeded to Baggatts' bedside. Adjacent to the bed, on a nightstand or dresser, the detectives observed a sheathed hunting

knife and one of them took it into his possession for safety. The two male detectives then roused Baggatts while Det. Kirk returned to the living room to remain with the girlfriend.

Baggatts was shirtless but wearing trousers. Det. Wagner asked Baggatts for identification, but, before allowing him to reach into his pockets, conducted a pat-down, in the course of which he encountered a "knot" or "hard wad" in one pocket. Wagner removed it—again for safety's sake, he said—and found it to be a roll of currency: $1 bills, on top of which were two counterfeit $20 bills. Det. Wagner placed Baggatts under arrest, advised him of his rights, and then asked the whereabouts of the "blue bag," observing that he could get a warrant and search for it if it were not revealed voluntarily. Baggatts responded that he was merely "holding [the "blue bag"] for a friend," then took the officers to a living room closet where he had secreted it, so that the officers would not "tear the place apart" searching for it.

Baggatts was taken to police headquarters where he gave a written statement to Det. Kirk, who again advised him of his rights beforehand. En route to the stationhouse he and the detectives detoured to drive by the residence of the "friend" for whom Baggatts said he was "holding" the contraband.

## II.

■ The Court concludes that all of the evidence acquired by Dets. Wagner, Dunn, and Kirk on the morning of June 10, 1986, as a result of the foregoing events must be suppressed. The detectives did not act pursuant to a warrant to search or arrest, nor did they go to the apartment to arrest Baggatts upon probable cause. In effect, they conducted a *"Terry* stop"[1] of Baggatts in his own bedroom. The government has cited no cases, and the Court has found none, which purport to hold that the police may lawfully extricate objects from a suspect's pants pocket in such circumstances, and the Court concludes that it constituted an unreasonable search and seizure in violation of the Fourth Amendment, unless, as the government contends, it all took place with the consent of Baggatts and his girlfriend. But the girlfriend did not admit the detectives to the apartment; an opened door is not an invitation to come inside. Once in the apartment, the detectives had no reason at all to think they had permission to enter the bedroom. And Baggatts' failure to resist does not signify his assent to a search of his person. The Court finds no consent on the part of either of them to the intrusions they endured.[2]

■ But for the fortuitous discovery of the counterfeit bills in his pocket, Baggatts might or might not have been disposed to reveal the location of the "blue bag," to make other damaging oral admissions despite *Miranda* warnings, or to give his written statement to Det. Kirk at police headquarters. The Court finds, however, that the government has not sustained its burden of proving that he would have, i.e., that his conduct and statements were "sufficiently an act of free will to purge the primary taint of the unlawful invasion."[3] It finds that the defendant disclosed concealed evidence because he reasonably believed that the evidence unlawfully seized from him would support a search warrant for the apartment, and that the police would then have authority to "tear up the place" if he did not cooperate. The Court also finds that the defendant's statements, despite *Miranda* warnings, reflected only his resignation to what appeared to be an inevitable fate, and were not given freely.[4]

---

1. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. The Court also finds that a pocket-sized quantity of currency, whether rolled or folded, does not resemble to touch any known weapon likely to endanger an armed police officer.

3. *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

4. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1986).

Baggatts was arrested following an unlawful search of his person. The balance of the evidence acquired as a result by Dets. Wagner, Dunn, and Kirk on June 10, 1986, is "fruit of the poisonous tree." The motion to suppress is granted, and it is, this 3rd day of November, 1986,

ORDERED, that the United States is precluded at trial from offering in evidence the counterfeit bills removed from defendant's pants pocket; the "blue bag" and the contents thereof; and any oral, written or non-verbal statements made by defendant on June 10, 1986.